**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

**CROSNER LEGAL, P.C.**
Michael Crosner (SBN 41299)
*mike@crosnerlegal.com*
Zachary Crosner (SBN 272295)
*zach@crosnerlegal.com*
Chad Saunders (SBN 257810)
*chad@crosnerlegal.com*
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Tel. (310) 496-5818
Fac. (310) 510-6429

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SUMMER WHITESIDE, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

KIMBERLY-CLARK CORP.,

Defendant.

Case No.: 5:22-cv-01988

**CLASS ACTION COMPLAINT**

1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
2. Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)
3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)
4. Breach of Warranty
5. Unjust Enrichment

**JURY TRIAL DEMANDED**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS

Page No.

COMPLAINT ............................................................................................................. 1

I.      INTRODUCTION ........................................................................................... 1

II.     JURISDICTION .............................................................................................. 5

III.    VENUE ........................................................................................................... 5

IV.     PARTIES ........................................................................................................ 5

        A.      Plaintiff ................................................................................................ 5

        B.      Defendant ............................................................................................. 7

V.      FACTUAL ALLEGATIONS .......................................................................... 7

        A.      Market and Regulatory Background .................................................... 7

        B.      Defendant's Brand Strategy ............................................................... 10

        C.      Falsity of the Challenged Representations ......................................... 11

        D.      Plaintiff and Reasonable Consumers Were Misled by the Challenged
                Representations into Buying the Products, to Their Detriment, Consistent with
                Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely
                Advertised Products ........................................................................... 14

        E.      The Products are Substantially Similar ............................................. 18

        F.      No Adequate Remedy at Law ............................................................ 18

VI.     CLASS ACTION ALLEGATIONS ............................................................. 20

CAUSES OF ACTION ...................................................................................... 24

        COUNT ONE ................................................................................................ 24

                A.      "Unfair" Prong ...................................................................... 27

                B.      "Fraudulent" Prong ............................................................... 28

                C.      "Unlawful" Prong ................................................................. 29

        COUNT TWO ............................................................................................... 31

        COUNT THREE ............................................................................................ 32

        COUNT FOUR .............................................................................................. 35

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

COUNT FIVE ................................................................................................. 36

PRAYER FOR RELIEF ................................................................................... 38

DEMAND FOR JURY TRIAL ....................................................................... 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

**COMPLAINT**

1. Plaintiff Summer Whiteside ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and/or "**Class Members**"), brings this class action against Defendant Kimberly-Clark Corp. ("**Defendant**" and or "**Kimberly-Clark**"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.   INTRODUCTION

2. **Synopsis.** In an effort to increase profits and to obtain an unfair advantage over its lawfully acting competitors, Defendant falsely and misleadingly labels certain of its Huggies brand wipe products with the following claims: "**Plant-based wipes**" and "**natural care**" deliberately leading reasonable consumers, including Plaintiff, to incorrectly believe that the Products are composed of only water, natural ingredients, and ingredients that come from plants and that have not undergone substantial processing (hereinafter, "**Plant-Based Representation,**" and/or "**Natural Care Representation,**" and/or "**Challenged Representations**"). Defendant reinforces the Challenged Representations on the Products' packaging by displaying images of plants, including leaves and trees, and by using green/blue coloring, further perpetuating the notion that the Products are natural and plant-based. Fair and accurate depictions of the Products' top-facing labels or packaging (Huggies *Natural Care*® Baby Wipes (Sensitive) and Huggies *Natural Care*® Baby Wipes (Refreshing)), are depicted below with the Challenged Representations circled in red.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Huggies *Natural Care*® Baby Wipes (Sensitive, 56 Count—Original Packaging) (**Exhibit 1-1A**):



(*see also* Huggies *Natural Care*® Baby Wipes (Sensitive), **Exhibit 1-1A to 1-1M**); and

Huggies *Natural Care*® Baby Wipes (Refreshing, 56 Count—Original Packaging) (**Exhibit 1-2A**):



(*see also* Huggies *Natural Care*® Baby Wipes (Refreshing), **Exhibit 1-2A to 1-2M**.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

3.      **The Deception of the Challenged Representations.** The Challenged Representations have misled reasonable consumers, including Plaintiff, into believing the Products only contain water, natural ingredients, and ingredients that come from plants and that are not subject to chemical modification or processing. However, contrary to the labeling, the Products contain numerous ingredients that are not natural and **do not come from plants whatsoever**, including artificial or synthetic ingredients. In addition to the synthetic ingredients that are not plant-based and not natural, the Products contain numerous ingredients that have been subjected to chemical modification or processing. These ingredients are subjected to substantial chemical modification and processing, such that the resulting ingredient used in the Products is a synthetically created ingredient. Through falsely, misleadingly, and deceptively labeling and advertising the Products, Defendant sought to take advantage of consumers' desire, perceived value, and willingness to pay more for plant-based and natural products as consumers view such products to be natural and therefore healthier, safer, and more environmentally conservative than non-natural, non-plant-based products. In this way, Defendant has charged consumers a premium for non-plant-based and non-natural products falsely advertised and warranted as "plant-based" and "natural," while cutting costs and reaping the financial benefits of utilizing cheaper- and easier-to-procure ingredients that are not water and either do not come from plants or were artificially created, synthesized, or subjected to substantial processing. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage. Accordingly, Defendant's Plant-Based and Natural Care Representations are misleading and deceptive, and therefore unlawful.

4.      **Products.** The Products at issue are the Huggies *Natural Care*® brand baby wipes sold to consumers in the United States that contain the Challenged Representations on the front labels and/or packaging, regardless of the Products' size or variations—such as wipe count or type of packaging (e.g., original packaging or Disney packaging) (collectively referred to herein and throughout this complaint as the "**Products**"), which include, but not necessarily limited to, the following products:

a.   Huggies *Natural Care*® Baby Wipes (Sensitive), in all variations or packaging types (Original or Disney) and in all sizes (including, but not limited to, 56 count, 168 count, 184 count, 288 count, 352 count, 488 count, 528 count, 560 count, 624 count, 960 count, and 1088 count). *See* **Exhibit 1-1A to 1-1M** [Product Images for Huggies *Natural Care*® Baby Wipes (Sensitive)]; and

b.   Huggies *Natural Care*® Baby Wipes (Refreshing), in all variations or packaging types (Original or Disney) and in all sizes (including, but not limited to, 56 count, 168 count, 184 count, 288 count, 352 count, 488 count, 528 count, 560 count, 624 count, 960 count, and 1088 count). *See* **Exhibit 1- 2A to 1-2M** [Product Images for Huggies *Natural Care*® Baby Wipes (Refreshing)].

5.       **Primary Dual Objectives.**   Plaintiff brings this action, individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*), for dual primary objectives: ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for Products that should, but fail to, comport with the Challenged Representations (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. ***Two***, Plaintiff seeks, on her individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations from the Products' labels and/or packaging, removal or modification of the Challenged Representations from the Products' advertising, modification of the Product's formulation be it a change in ingredients or their sourcing and manufacturing processes, and/or discontinuance of the Product's manufacture, marketing, and/or sale.

## II.   JURISDICTION

6.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.   VENUE

7.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff purchased the unlawful Products in this District, and Defendant has deliberately marketed, advertised, and sold the Products within this District using the Challenged Representations.

## IV.   PARTIES

### A.   Plaintiff

8.      **Plaintiff Summer Whiteside.** The following is alleged based upon Plaintiff Whiteside's personal knowledge:

    a.   **Residence.** Plaintiff is a resident of Murrieta, California.

    b.   **Purchase Details.** Plaintiff purchased Huggies *Natural Care*® Baby Wipes (Sensitive) on several occasions, including in the fall/winter of 2021 at a Target retail store in Murrieta, California and the Huggies *Natural Care*® Baby Wipes (Refreshing) during the Class Period at a Target retail store in Murrieta, California.

    c.   **Reliance on Challenged Representations**. In making the purchase, Plaintiff read the Challenged Representations on the Product's labels and packaging, leading Plaintiff to believe that the Product was plant-based and natural—i.e., the Product was composed of water and only ingredients that were natural and come from plants, which are neither artificial, synthetic, or highly processed.

    d.   **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff did not know that the Challenged Representations were false in that Plaintiff did not know that the Products were not actually natural and not plant-based—i.e., Plaintiff did not know that the Products' were not composed entirely of water and plant and natural ingredients, but instead included ingredients that were not water, were not natural, and did not come from plants because they are artificial, synthetic, and highly processed.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

e. **No Notice of Contradictions.** Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' labels or packaging that contradicted the prominent Challenged Representations or otherwise suggested that the Products were not, in fact, plant-based and natural and therefore did, in fact, contain ingredients that were not water, not plant-based, and were artificial, synthetic, or highly processed.

f. **Causation/Damages.** Plaintiff would not have purchased the Products or would not have paid as much for the Products, had Plaintiff known that they were not plant-based and not natural—i.e., that the Products were not composed entirely of water and natural and plant ingredients, but instead contained ingredients that were not water and were artificial, synthetic, and/or highly processed.

g. **Desire to Repurchase.** Plaintiff continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were in fact true.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff does not personally know what ingredients are actually contained in the Products or the methods used to make the Products (including sourcing and manufacturing processes), and Plaintiff does not possess any specialized knowledge or general familiarity with the Products' ingredients or the methods typically used to obtain or make such ingredients (including sourcing and manufacturing processes), such that Plaintiff does not personally know and cannot determine whether the Products' ingredients: (a) come from plants or some other raw materials, (b) are naturally harvested or artificially created or synthesized, or (c) have undergone substantial synthetic processing; and, therefore, Plaintiff has no way of determining whether the Challenged Representations on the Products are true.

i. **Inability to Rely.** Plaintiff is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' labels.

9. **Plaintiff's Future Harm.** Defendant continues to market and sell the Products with the Challenged Representations. Plaintiff would like to purchase the Products in the future if they lived up to and conformed with the Challenged Representations. However, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of personal care products, such as the Products. Indeed, Plaintiff does not have any personal knowledge regarding the ingredients, or the methods Defendant used to make them (including sourcing and manufacturing processes). Thus, Plaintiff cannot accurately differentiate between ingredients that are natural and come from plants, as opposed to other ingredients that are synthetic, artificial, and highly processed ingredients. Since Plaintiff wants to purchase the Products again to obtain the benefits of the Challenged Representations—despite the fact that the Products were once marred by

6

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representations on their labels, packaging, and Defendant's advertisements, including Defendant's websites and social media platforms. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products' advertising such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiff is currently and in the future deprived of the ability to rely on the Challenged Representations in deciding to purchase the Products.

### B. Defendant

10. **Defendant Kimberly-Clark Corp. ("Defendant")** is headquartered and/or maintains a principal place of business in the State of Texas. Defendant was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, marketer, and/or distributor of the Products, and created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products.

## V. FACTUAL ALLEGATIONS

### A. Market and Regulatory Background

11. **Consumer Demand for Natural and Plant-Based Products.** In recent years, consumers have poured billions of dollars into the "plant-based" and "natural" personal care market.[1] Consumers value natural, plant-based products for their perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and

---

[1] *See generally Plant-Based Personal Care Products*, Eternal Spiral Books (Nov. 24, 2018), https://eternalspiralbooks.com/plant-based-personal-care-products/ (last accessed October 19, 2022).

financially supporting the companies that share these values.[2] As such, there is a recognized association among consumers and the concept of nature (e.g., "natural" and "plant-based" products) and positive feelings associated with nature. Peer-reviewed published research has found that the perceived naturalness of a product is "very important" to consumers.[3] In response to consumers' desire for plant-based and natural products, many companies, including Defendant, have scrambled to manufacture, market, and sell purportedly "plant-based" and "natural" products in an effort to gain market share. Unfortunately, rather than creating the plant-based and natural products consumers desire, Defendant has instead chosen to "greenwash" the Products and market them through deceptive labeling and advertising (i.e., the Challenged Representations) to convince consumers the Products are natural and plant-based when, in reality, they contain numerous synthetic, artificial, and highly processed ingredients.

12.      **FTC Guidelines.**

a.   In response to this consumer fraud, the United States Federal Trade Commission ("**FTC**") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[4]  As relevant here, the FTC stated:

> Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of "biobased," and other similar claims, such as **"plant-based,"** in the context of their advertisements.

16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246.[5] Here, Defendant disregarded FTC guidelines on "Plant-Based" claims, opting to manufacture the Products with ingredients that are neither water nor plant, and at times entirely artificial, synthetic, or substantially processed. Thus, Defendant did not fulfill its responsibility to "substantiat[e] consumers' reasonable understanding of . . . 'plant-based'" advertising claims as reasonable

---

[2] *Id.*

[3] S. Roman et al., *The importance of food naturalness for consumers: Results of a systematic review*, Trends in Food Science & Technology (2017) 67:44-57.

[4] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.

[5] Available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (emphasis added).

8

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

consumers, such as Plaintiff, reasonably believe that "plant-based" Products only contain water or plant ingredients that have not undergone substantial processing.

b. The FTC has also cautioned "[m]arketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, that the marketer must be able to substantiate that fact." Guides for the Use of Environmental Marketing Claims, 75 FR 63552-01, 63586 (Oct. 15, 2010).

13.    **Definitions.**

a. **Dictionary: Plant-Based.** The Merriam-Webster standard dictionary defines "plant-based" as "made or derived from plants" and "consisting primarily or entirely of food (such as vegetables, fruits, nuts, oils, and beans) derived from plants."[6]

b. **Dictionary: Natural.**   The Merriam-Webster standard dictionary defines "natural" as "existing in or produced by nature: not artificial," and "not having any extra substances or chemicals added: not containing anything artificial."[7]

c. **Synthetic.** "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]" 7 U.S.C. § 6502 (21).

d. **Dictionary: Artificial.** The Merriam-Webster standard dictionary defines "artificial" as "humanly contrived" and "MAN-MADE."[8]

---

[6]Merriam-Webster.com, *plant-based*, available at https://www.merriam-webster.com/dictionary/plant-based (accessed 11/3/2022).

[7] Merriam-Webster.com, *natural*, available at https://www.merriam-webster.com/dictionary/natural (accessed 11/3/2022).

[8] Merriam-Webster.com, *artificial*, available at https://www.merriam-webster.com/dictionary/artificial (accessed 11/3/2022).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

14.     **Consumer Perception.** Accordingly, reasonable consumers, like Plaintiff, interpret the Plant-Based Representation and the Natural Care Representation to mean that the Products contain no non-natural, artificial, and/or synthetic ingredients.

**B.     Defendant's Brand Strategy**

15.     **Brand Strategy.** Defendant deliberately created and executed a brand strategy to distinguish the Huggies Natural Care® brand, company, and the Products at issue in this case, as clean, sustainable, and well-designed products that are natural and plant-based. Defendant labels the Products' packaging with the Challenged Representations: "Plant-based wipes" and "natural care."

16.     **Challenged Representations on Products' Labels.** Defendant falsely and misleadingly labels the Products with the Challenged Representations: "PLANT-BASED WIPES" and "Natural Care" as depicted below.



17.     The Challenged Representations on the Products' packaging is conspicuous and designed to grab the consumer's attention.

a.  **Product Name.** The Challenged Representations are incorporated into the Products' name ("Huggies natural care") and identification as a wipe ("Plant-based wipes"), such that consumers will identify the Products according to these descriptive features and otherwise uses the Challenged Representations as part of the Products' name. *See generally* **Exhibit 1** [Product Images].

b.  **Placement.** The Challenged Representations are prominently placed on each of the Products' primary display panel of the front label or packaging, immediatelyt underneath the Products' brand name ("HUGGIES"). *See* **Exhibit 1** [Product Images].

c.  **Repetition.** The Challenged Representations are repeatedly used on the sides or panels of the Product's packaging, including the front and side panels. *See* **Exhibit 1** [Product Images].

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d. **Sparsity.** The Challenged Representations are not hidden in a sea of information; rather, the front and side display panels contain scant information about the Products, largely limited to the brand name (Huggies) and a few claims about the Products' attributes (e.g., "Sensitive" and "With Cucumber & Green Tea"). *See* **Exhibits 1-2** [Product Images].

e. **Typeface.** The Challenged Representations stand out from the scant information contained on the front panel, prominently displayed with a bold and large typeface, clear and legible font, and highly visible black, blue, and green letters that starkly contrast with the Products' background. *See* **Exhibits 1-2** [Product Images].

e. **Imagery.** Defendant uses imagery to reinforce the Challenged Representations. The Challenged Representations are alongside an image of plants, including trees and leaves. *See* **Exhibits 1-2** [Product Images].

f. **Trademarked Logo.** Indeed, Defendant trademarked a company logo— specifically the Products name, "HUGGIES natural care®," which is on the front and center of the Products' labeling.

18.     To draw consumers' attention, the Challenged Representations are prominently displayed in the center of the label; bold typeface; clear; legible; and highly visible green or blue font; all of which starkly contrasts with the packaging's vast white background. Furthermore, Defendant includes imagery of plants on the Products' labeling and packaging (e.g., flowers and trees). The net-effect or net-impression on consumers is that the Products contain only natural ingredients that come from plants and do not contain ingredients that do not come from plants or ingredients that are subject to chemical modification and/or processing. *See* **Exhibit 1** [Product Images]; **Exhibit 2** [Ingredient Disclosures].

**C.     Falsity of the Challenged Representations**

19.     **The Challenged Representations.** Although each of the Products at issue is labeled and advertised with the Natural Care Representation and the Plant-Based Representation, the Products are chock full of ingredients that are not water, are not natural, and do not come from plants, and, in many instances, are artificially created, synthesized, or highly processed. **Exhibit 2** [Ingredient Disclosures]. Specifically:

a. **Huggies *Natural Care*® Baby Wipes (Sensitive)**, in all packaging types or variations and sizes, contains the following ingredients that are not water, are not natural, and

are not plants:

(1) Butoxy PEG-4 PG-Amodimethicone: Is a polyethlene glycol (PEG). PEGs are petroleum-based compounds that are used to enhance skin penetration of other chemicals. Butoxy PEG-4 PG-amodimethicone has contamination concerns with ethylene oxide, a known carcinogen. PEG-4 is a polymer of ethylene oxide alcohol and is a humectant and solvent in cosmetic products.[9] PEGs are synthetic.

(2) Caprylyl Glycol: Is also known as 1,2-Octabediol. It is a skin and hair conditioning agent and is synthetically produced by catalytic oxidation of ethylene glycol, a petrochemical process.

(3) Coco-Betaine: Is an emulsifying agent and thickener. It is the commercial name for the surfactant cocamidopropyl betaine. Cocamidopropyl betaine is a synthetic ingredient resulting from by the chemical synthesis of fatty acids and dimethylaminopropylamine. Dimethylaminopropylamine has been found to be a residual impurity resulting from the commercial cocamidopropyl betaine synthesis and is a known skin irritant.

(4) Malic Acid: Is a pH balancer. It is synthetically produced either by the catalytic oxidation of benzene, which produces maleic acid, which is then converted to malic acid by heating with steam under pressure, or by the hydration of fumaric acid.

(5) Polysorbate 20: Is a complex mixture of oligomers that include polyethylene glycols, polyethylene glycol esters, isosorbide polyethoxylates, sorbitan polyethoxylates, polysorbate monoesters, polysorbate diesters, and sorbitol polyethoxylate esters. It is a surfactant, formed by the ethoxylation of sorbitan monolaurate, is produced with the carcinogen, ethylene oxide, and has contamination concerns with 1,4-dioxane, another carcinogen. It is a polyethoxylated sorbitan or sorbital esters of fatty acids. There are two common routes of synthesis. In the first, sorbitol is esterified with fatty acids and then dehydrated. These dehydration products react with a fatty acid to form sorbitan esters, which are ethoxylated to form polysorbate-20. In the second, sorbitol is reacted with ethylene oxide and a basic catalyst at high temperatures. The products are subsequently esterified with fatty acids to produce polysorbate-20. It is a synthetic ingredient.

(6) Sodium Benzoate: Is a chemical preservative that does not occur naturally and is used to prevent bacteria contamination. Sodium benzoate is the chemical benzoate of soda ($C_7H_5NaO_2$), produced by the neutralization of benzoic acid with sodium bicarbonate, sodium carbonate, or sodium hydroxide.

---

[9] *See* Final report on the safety assessment of Triethylene Glycol and PEG-4. Int J Toxicol. 2006;25 Suppl 2:121-38.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

12

(7) <u>Sodium Citrate</u>: Is the trisodium salt of citric acid, which is synthetically created by mycological fermentation of crude sugar stocks. Sodium citrate is listed as being "synthetic" under 7 C.F.R. § 205.605.

b.  **Huggies *Natural Care*® Baby Wipes (Refreshing)**, in all packaging types or variations and sizes, contains the following ingredients that are not water, are not natural, and are not plants:

(1) <u>Butoxy PEG-4 PG-Amodimethicone:</u> *See supra.*

(2) <u>Caprylyl Glycol</u>: *See supra.*

(3) <u>Coco-Betaine</u>: *See supra.*

(4) <u>Fragrance</u>: Synthetic compounds composed of petroleum by-products, such as benzene derivatives, aldehydes, toluene, and other known toxic chemicals.

(5) <u>Glycerin</u>: Is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen. Multiple methods exist for the synthetic manufacture of glycerin. The starting materials for the synthetic production of glycerin include allyl chloride, acrolein, propylene oxide, sugars, certain polyalchols, fats, or epichlorohydrin.

(6) <u>Malic Acid</u>: *See supra.*

(7) <u>Polysorbate 20</u>: *See supra.*

(8) <u>Sodium Benzoate</u>: *See supra.*

(9) <u>Sodium Citrate</u>: *See supra.*

(10) <u>Tocopheryl Acetate</u>: A synthetic, highly processed form of Vitamin E, manufactured by the esterification of dl-α-tocopherol with acetic acid.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

D. **Plaintiff and Reasonable Consumers Were Misled by the Challenged Representations into Buying the Products, to Their Detriment, Consistent with Defendant's Deliberate Marketing Scheme to Exact a Premium for the Falsely Advertised Products**

20. **Products.** Defendant manufactures, markets, promotes, advertises, labels, packages, and sells the Products—specifically, Huggies brand Natural Care® and Plant-Based baby wipes that contain the Challenged Representations on their packaging and labels.

21. **The Challenged Representations**. On the Products' labeling and packaging, Defendant prominently, conspicuously, and repeatedly displays the Challenged Representations—specifically, "Plant-based wipes" and "natural care" (*see* **Exhibits 1** [Product Images]).

22. **Reasonable Consumer's Perception.** The Challenged Representations lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations. Reasonable consumers interpret the Challenged Representations to mean that the Products are "plant-based" and "natural"—meaning, the Products only contain water and natural ingredients that come from plants, which are not artificially created, synthesized, or subjected to substantial processing.

23. **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning that the Products' "Plant-Based" and "Natural Care" attributes are important to consumers and motivates them to buy the Products.

24. **Reliance.** The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

25. **Falsity.** The Challenged Representations are false and deceptive because the Products are not entirely natural and plant-based—meaning that the Products are not exclusively comprised of water and plant and natural ingredients. Instead, they contain ingredients that are not water, do not come from plants, are not natural, and instead are artificially created, synthesized, and substantially processed.

26. **Consumers Lack Knowledge of Falsity.** Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendant and therefore have no personal knowledge of the actual ingredients used to formulate the Products, including the methods used to source and manufacture those ingredients. Additionally, most consumers do not have the specialized knowledge of a chemist or product-developer, or an encyclopedic knowledge base of every chemical or ingredient name and the standard methods used to source and manufacture them. Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures whether non-water ingredients come from plants and are natural or, instead, were artificially created, synthesized, or substantially processed. Furthermore, reasonable consumers, like Plaintiff, do not ordinarily review information on the back or side panels of a consumer products' packaging, like the Products' packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at a consumer product's side or back labels before they buy it.[10]

---

[10]    Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A&originRegion=us-east-1&originCreation=20220720162546 (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

27.    **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside its marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

a.    **Knowledge of Falsity.** Defendant named and marketed the Products with the Challenged Representations, but Defendant opted to formulate and manufacture them in a manner that does not conform to those representations. Specifically, Defendant named and advertised the Products as "Plant-Based" and "Natural Care." Instead of using only natural ingredients that are water or plants, Defendant chose to manufacture the Products with numerous ingredients that are artificial, synthetic, or subjected to substantial processing. Further, Defendant admits that "synthetics and chemicals are the primary raw materials for manufacturing nonwoven fabrics, which are used in … wet wipes[.]"[11]

b.    **Knowledge of Reasonable Consumers' Perception.** Defendant knew, or should have known, that the Challenged Representations would lead reasonable consumers into believing that the Products were entirely natural and plant-based—meaning that the ingredients are natural and consist exclusively of water and plants; not artificial, synthetic, or substantially processed. Not only has Defendant labeled and packaged each of the Products with the Challenged Representations and utilized a brand strategy to identify the Products as plant-based and natural, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products were entirely plant-based and devoid of any artificial, synthetic, and substantially

*shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed Jul. 20, 2022) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

[11] Form 10-K, 2021 Annual Report, executed on February 10, 2022, publicly available on its official website, and available at kimberly-clark.com/static-files/ddd8827b-32f9-41cc-bc57-e574b9dffb4f (last accessed October 19, 2022).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

16

processed ingredients. Thus, Defendant either knew the Challenged Representations are misleading before it marketed the Products to the Class, including Plaintiff, or Defendant would have known that it is deceptive had it complied with its statutory obligations.

c.  **Knowledge of Materiality.**  Defendant knew or should have known that the Challenged Representations are material to consumers. ***First***, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels of packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels and packaging demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the use of the Challenged Representations on the Products, advertisements, and throughout Defendant's marketing campaign, evidence Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

d.  **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, packaging, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations falsity, and Defendant's knowledge that consumers reasonably rely on the Challenged Representations in deciding to buy the Products, Defendant deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations misleads reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

28.  **Detriment.**  Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for the Products, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**E.     The Products are Substantially Similar**

29.     As described herein, Plaintiff purchased the Huggies *Natural Care*® Baby Wipes (Sensitive) and the Huggies *Natural Care*® Baby Wipes (Refreshing) Products. Both Products are substantially similar.

a.  **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b.  **Brand.** All Products are sold under the same brand name: Huggies.

c.  **Purpose.** All Products are baby wipes primarily intended to be used to wipe substances away from human body surfaces.

d.  **Key Ingredients.** All Products are made from largely the same ingredients and contain non-plant-based and non-natural, chemically modified, and highly processed ingredients, in overlapping combinations. *See* **Exhibit 2** [Ingredient Disclosures].

e.  **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

f.  **Challenged Misrepresentations.** All Products contain the same Challenged Representations: "**Plant-based wipes**" and "**natural care**" conspicuously and prominently placed on the primary display panel of the front label and/or packaging. Defendant reinforces the Challenged Representations on the Products by displaying images of plants, including trees and leaves, and by using green/blue coloring. *See* **Exhibit 1** [Product Images].

g.  **Packaging.** All Products are packaged in similar packaging—using a white background, and similar styles for written content. The Products share, the same marketing claims written on the packaging, including brand identity (Huggies Natural Care), the same "Plant-Based" claims, and number of wipes (e.g., 56 wipes).

h.  **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products—consumers over-pay a premium for natural care, plant-based Products, but receive Products that contain synthetic, artificial, and highly processed ingredients

**F.     No Adequate Remedy at Law**

30.     **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.  **Broader Statutes of Limitations.** The statutes of limitations for the causes of

18

action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the

more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. *California vs. Nationwide Class Claims*. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.    CLASS ACTION ALLEGATIONS

31.    **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follow:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations on the Products' front packaging for purposes other than resale ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representations on the Products' front packaging, for purposes other than resale ("**California Subclass**").

(Nationwide Class and California Subclass, collectively, the "**Class**").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

32.    **Class Definition Exclusions.**   Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

33.    **Reservation of Rights to Amend the Class Definition.**   Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

34.    **Numerosity:**  Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

35.    **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

    a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

    b.    Whether Defendant's conduct of advertising and selling the Products as plant-based when they contain synthetic ingredients constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

    c.    Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

    d.    Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

    e.    Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

    f.    Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

21

g.   Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.   Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.   Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.   Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.   Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.   How much more money Plaintiff and the Class paid for the Products than they actually received;

m.   Whether Defendant's conduct constitutes breach of warranty;

n.   Whether Plaintiff and the Class are entitled to injunctive relief; and

o.   Whether Defendant was unjustly enriched by their unlawful conduct.

36.   **Typicality:** Plaintiff's claims are typical of the claims of the Class Members they seek to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

37.   **Adequacy:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

38.     **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

    c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

39.     **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

40.     **Injunctive/Equitable Relief.**  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

41.     **Manageability.**  Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# CAUSES OF ACTION

## COUNT ONE

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (*On Behalf of the California Subclass*)

42.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

43.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

44.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

45.    **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Plant-Based and Natural Care Representations—despite the fact the Products contain numerous ingredients that are not natural and do not come from plants, as well as ingredients that have gone through chemical processing and modification.  Such claims and omissions appear on the labeling and packaging of the Products, which are sold at retail stores, point-of-purchase displays, and online.

46.    **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products contain artificial, synthetic, and highly processed ingredients. Defendant knew and knows that the Products contain ingredients other than natural and plant-based ingredients, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products contain only natural and plant-based ingredients.

CLASS ACTION COMPLAINT

47. **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products only contain natural and ingredients that come from plants and water, and that were not subjected to chemical modification or processing.

48. **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representations—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

49. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

50. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

51. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or is otherwise ordered to do so.

52. **Injunction.** Pursuant to Business and Professions Code sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling and advertising the sale and use

of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

53. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

54. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of the Defendant.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

### A. *"Unfair" Prong*

2      55.     **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any

3  injury it causes outweighs any benefits provided to consumers and the injury is one that the

4  consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,*

5  142 Cal.App.4th 1394, 1403 (2006).

6      56.     **Injury.** Defendant's action of mislabeling the Products with the Challenged

7  Representations does not confer any benefit to consumers; rather, doing so causes injuries to

8  consumers, who do not receive products commensurate with their reasonable expectations, overpay

9  for the Products, and receive Products of lesser standards than what they reasonably expected to

10 receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling

11 and/or advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive

12 labeling and advertising outweigh any benefits.

13      57.     **Balancing Test.** Some courts conduct a balancing test to decide if a challenged

14 activity amounts to unfair conduct under California Business and Professions Code Section 17200.

15 They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

16 victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

17      58.     **No Utility.** Here, Defendant's conduct of labeling the Products with the Plant-Based

18 and Natural Care Representations when the Products contain ingredients that are not natural, that

19 do not come from plants, and contain ingredients chemically modified has no utility and financially

20 harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of

21 harm.

22      59.     **Legislative Declared Policy.** Some courts require that "unfairness must be tethered

23 to some legislative declared policy or proof of some actual or threatened impact on competition."

24 *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

25      60.     **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged

26 herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant

27 knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an

28 unfair business practice within the meaning of California Business and Professions Code Section

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

27

17200.

61.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Plant-Based and Natural Care Representations.

62.     **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

63.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Plant-Based Representations.

64.     **Causation/Damages**. Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that contained ingredients that are non-natural, synthetic, and/or highly processed. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive.  Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### B. *"Fraudulent" Prong*

65.     **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

66.     **Fraudulent & Material Challenged Representations.** Defendant used the Plant-Based and Natural Care Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are false, and Defendant knew or should have known of its falsity. The Challenged Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

reasonable consumer.

67. **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code section 17200.

68. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

69. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Plant-Based and Natural Care Representations.

70. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

71. **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Plant-Based Representations.

72. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for products that they believed only contained natural ingredients, ingredients that come from plants, and ingredients that were not subjected to chemical modification or processing, which materially altered the ingredients' original plant-based composition. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### C. "Unlawful" Prong

73. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC*

*Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

74.     **Violations of CLRA and FAL.**  Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

75.     **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

76.     **Unlawful Conduct.** Defendant's marketing, packaging, labeling, and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct. Defendant knew or should have known of its unlawful conduct.

77.     **Reasonably Available Alternatives.** Defendant had reasonable available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Plant-Based and Natural Care Representations and/or omitting that the Products contained ingredients that are not natural, plant based, chemically modified, and/or highly processed.

78.     **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

79.     **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive labeling and advertising of the Products.

80.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are truly natural, plant-based wipes. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

<u>**COUNT TWO**</u>

**Violation of the False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

**(*On Behalf of the California Subclass*)**

81.   **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

82.   **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

83.   **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

84.   **False & Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Plant-Based and Natural Care Representations disseminated to the public through the Products' labeling, packaging, and advertising. These representations were false because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

85.   **Knowledge.** In making and disseminating the Challenged Representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

86.   **Intent to sell.** Defendant designed the Challenged Representations specifically to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

87.   **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

88.     **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**<u>COUNT THREE</u>**

**Violation of the Consumers Legal Remedies Act ("CLRA")**

**(California Civil Code §§ 1750, *et seq.*)**

**(*On Behalf of the California Subclass*)**

89.     **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

90.     **California Subclass.** Plaintiff brings this claim individually and on behalf of the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

California Subclass who purchased the Products within the applicable statute of limitations.

91. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

92. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

93. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

94. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

95. **Transactions.** Purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

96. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

97. **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

98. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

99. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

100. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

101. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code section 1782, and concurrent to the filing of this complaint, Plaintiff's counsel, acting on behalf of Plaintiff and members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Kimberly-Clark Corp. at its headquarters and principal place of business (Kimberly-Clark Corp., 351 Phelps Dr., Irving, TX 75038) and its registered agent for service of process (330 N. Brand Blvd., Glendale, CA 91203). At the appropriate time, Plaintiff will amend the operative complaint to seek monetary damages pursuant to the CLRA.

102. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, punitive damages, and any interest that would have accrued on those monies, in an amount to be proven at trial.

103. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products' with the Challenged Representations.

## COUNT FOUR

### Breach of Warranty

#### (*On Behalf of the Nationwide Class and California Subclass*)

104. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

105. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

106. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

107. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant— to wit, that the Products, among other things, conform to the Challenged Representations.

108. **Breach of Warranty.** Contrary to Defendant's express warranties, the Products do not conform to the Challenged Representations and, therefore, Defendant breached its warranties about the Products and their qualities.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

109.    **Causation/Remedies.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

110.    **Punitive Damages**. Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## <u>COUNT FIVE</u>

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

111.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all

allegations contained in the complaint, as though fully set forth herein.

112.    **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

113.    **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

114.    **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

115.    **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

116.    **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

117.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**PRAYER FOR RELIEF**

118.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a.   **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representatives, and appointing Plaintiff's Counsel as Class Counsel;

b.   **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.   **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d.   **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e.   **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

f.   **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g.   **Pre/Post Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h.   **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: November 10, 2022

**CLARKSON LAW FIRM, P.C.**

By:  */s/ Ryan J. Clarkson*
     Ryan J. Clarkson
     Katherine A. Bruce
     Kelsey J. Elling
     Olivia M. Treister

**CROSNER LEGAL, P.C.**

By:  */s/ Chad A. Saunders*
     Michael R. Crosner
     Zachary M. Crosner
     Chad A. Saunders
     Craig W. Straub

*Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: November 10, 2022

**CLARKSON LAW FIRM, P.C.**

By: */s/ Ryan J. Clarkson*
    Ryan J. Clarkson
    Katherine A. Bruce
    Kelsey J. Elling

**CROSNER LEGAL, P.C.**

By: */s/ Chad A. Saunders*
    Michael R. Crosner
    Zachary M. Crosner
    Chad Saunders
    Craig W. Straub

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265