UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1988 JGB (SPx)** | Date | June 1, 2023 |
|---|---|---|---|
| Title | *Summer Whiteside v. Kimberly-Clark Corp.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 16); and (2) VACATING the June 5, 2023 Hearing (IN CHAMBERS)

Before the Court is Defendant Kimberly-Clark Corp.'s motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ("Motion," Dkt. No. 16.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the June 5, 2023 hearing.

### I.  BACKGROUND

On November 10, 2022, Plaintiff Summer Whiteside ("Plaintiff" or "Whiteside") filed a class action complaint against Defendant Kimberly-Clark Corp. ("Defendant"). ("Complaint," Dkt. No. 1.) On December 16, 2022, Plaintiff filed a first amended class action complaint against Defendant. ("FAC," Dkt. No. 12.) The FAC asserts five causes of action: (1) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (3) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (4) breach of warranty; and (5) unjust enrichment. (See id.)

On January 30, 2023, Defendant moved to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (See Motion.) On February 27, 2023, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 21.) On March 13, 2023, Defendant replied. ("Reply," Dkt. No. 22.)

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Motion. See Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004).

Defendant manufactures, markets, advertises, labels, packages, and sells Huggies brand Natural Care® baby wipes. (FAC ¶ 20.) Plaintiff challenges two formulations of Defendant's baby wipes: Huggies Natural Care® Baby Wipes (Sensitive) and Huggies Natural Care® Baby Wipes (Refreshing) (the "Products"). (Id. ¶ 2.) Both Products' packaging contain the claims, "plant-based" and "natural care" (the "Challenged Representations"). (Id.) Below is an example of Defendant's packaging as presented in the FAC. (Id.)



---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Plaintiff alleges that the Challenged Representations mislead reasonable consumers, including Plaintiff, to believe that the Products are composed of only water, natural ingredients, and ingredients that come from plants and that were not subject to chemical modification or processing. (Id. ¶ 3.) However, contrary to the labeling, the Products contain numerous ingredients that are not natural and do not come from plants, including artificial or synthetic ingredients. (Id.) By falsely, misleadingly, and deceptively labeling and advertising the Products, Defendant takes advantage of consumers' willingness to pay more for plant-based and natural products, which are perceived as healthier, safer, and more environmentally friendly than non-plant-based, non-natural products. (Id.) Thus, Defendant unlawfully charges a price premium from consumers and maintains an unfair competitive advantage over competitors. (Id.)

Plaintiff purchased Huggies Natural Care® Baby Wipes (Sensitive) in the 56-count size approximately every other week from October 2021 through February 2022 at a Target retail store in Murrieta, California. (Id. ¶ 8.) She paid approximately $2.39 per pack of wipes. (Id.) Before buying the Product, Plaintiff read the Challenged Representations on the Product's packaging and believed that the Product was plant-based and natural—i.e., the Product was composed of water and only ingredients that were natural or derived from plants, which are not artificial, synthetic, or highly processed. (Id.) Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that contradicted the prominent Challenged Representations. (Id.) Plaintiff would not have purchased the Product or would not have paid as much for it had Plaintiff known that it was not plant-based and natural. (Id.) Plaintiff continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were in fact true. (Id.) Plaintiff continues to be unable to rely on the truth of the Challenged Representations on the Products' labels and packaging. (Id.)

### III.   LEGAL STANDARD

**A.   Rule 12(b)(1)**

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the

plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B.    Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

//
//

**C.      Rule 15**

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.     DISCUSSION

Plaintiff brings claims under three California consumer protection statutes—the UCL, FAL, and CLRA—that cover "interrelated harms." See Fisher v. Monster Beverage Corp., 656 F. App'x 819, 822 (9th Cir. 2016). To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer. See Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). The reasonable consumer standard requires "more than a mere possibility that [Defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Lavie v. Procter & Gamble Co., 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003)). Rather, a plaintiff must plausibly allege a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id. (quoting Lavie, 129 Cal. Rptr. At 495). California laws "prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Williams, 552 F.3d at 938 (alteration in original) (internal quotation marks omitted).

At the motion to dismiss stage, a court can dismiss a complaint for failure to state a claim only where it can conclude as a matter of law that members of the public are not likely to be deceived by the advertisement. Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1017 (9th Cir. 2020). Whether an advertisement is deceptive will often be a question of fact not appropriate for decision on a motion to dismiss. See id.; Williams, 552 F.3d at 938. Nevertheless, the "primary evidence in a false advertising case is the advertising itself," Brockey v. Moore, 131 Cal. Rptr. 2d 746, 756 (Ct. App. 2003), and a court may resolve such claims based on its review of the product packaging, Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." Moore v. Trader Joe's Co., 4 F.4th 874, 882–83 (9th Cir. 2021) (citation omitted). A "'rational consumer' would not 'simply assume' something about a product that they can 'plainly see.'" Sinatro v. Mrs. Gooch's Natural Food Markets, Inc., 2023 WL 2324291, at *10 (quoting Ebner, 838 F.3d at 966). As such, it is appropriate to dismiss an action at the pleading stage when "it [is] not necessary to evaluate additional evidence regarding whether the advertising [is] deceptive, since the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer

[is] likely to be deceived." Williams, 552 F.3d at 939; see also Ebner, 838 F.3d at 966–68; Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (upholding dismissal where plaintiff's theory "defies common sense" and the advertising "was not likely to deceive a reasonable consumer").

Here, Plaintiff alleges that a reasonable consumer would interpret "plant-based" and "natural care" to mean that the Products contain *only* water, natural ingredients, and/or ingredients derived from plants, and no artificial, synthetic, or highly processed ingredients. (Opposition at 2.) Defendant retorts that "[r]easonable consumers understand that baby wipes don't grow on trees." (Motion at 1.) "They know that baby wipes are manufactured through sophisticated mechanical processes, using a combination of natural and synthetic ingredients to ensure that the wipes are effective, shelf-stable, and affordable." (Id.) Accordingly, Defendant argues, no reasonable consumer would expect baby wipes to come entirely from nature—and indeed, no such product exists. (Id. at 6.)

The Court finds that its reasonable consumer analysis depends on which version of Defendant's Product packaging Plaintiff challenges. Some Products include an asterisk next to the term "plant-based," which discloses on the front of the label that the wipes are made of "70%+ [plant-based materials] by weight" ("Asterisked Products"). (E.g., FAC Ex. 1-1B; 1-1C; 1-1D; 1-1I; 1-1L; 1-2B; 1-2C; 1-2I.) Below is an example of Defendant's packaging with an asterisk.



FAC Ex. 1-1C. Other Products do not include the asterisk ("Unasterisked Products"). (E.g., FAC Ex. 1-1A; Ex. 1-1E; 1-1F; 1-1G; 1-1H; 1-1J; 1-1K; 1-1M; 1-2A; 1-2M.) An example of Defendant's packaging without the asterisk is featured above in the Facts section. All Products, Asterisked or Unasterisked, are branded as "Natural Care®." (See FAC Ex. 1.) All Products list "natural and synthetic ingredients" on the back of the label. (See id.)

Defendant argues that the on-label disclosures of "70%+ by weight" and "natural and synthetic ingredients" dispel whatever misrepresentation allegedly exists. (Motion at 7 (citing In re 5-Hour Energy Mktg. & Sales Pracs. Litig., 2018 WL 11354864, at *5 (C.D. Cal. Jan. 24, 2018)).) The Court agrees. Reviewing the packaging as a whole, the Court finds that a reasonable consumer would not "simply assume" the Asterisked Products contain 100% natural ingredients when she can "plainly see" that the wipes are 70% plant-based by weight and made of natural and synthetic ingredients. See Sinatro, 2023 WL 2324291, at *10 (quoting Ebner, 838 F.3d at 966). "Plaintiff cannot simply look to the statement on the front panel, ignore the asterisk, and claim [she] has been misled." Moreno v. Vi-Jon, Inc., 2021 WL 807683, at *6 (S.D. Cal. Mar. 3, 2021); see also Dinan v. SanDisk LLC, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020).[2] Given that Defendant's use of the term "plant-based" on Asterisked Products is qualified by the disclosure that it means 70% by weight, a reasonable consumer is not likely to be misled into believing that the Products are 100% plant-based. See, e.g., Moreno, 2021 WL 807683, at *6 (dismissing case where the products' "primary display panel contains an asterisk . . . direct[ing] the consumer to the back panel"); Dinan, 2020 WL 364277, at *9 (dismissing case where "the disclosure serves not to 'cure' but rather to 'clarify' Defendant's use of [a] term"); Sponchiado v. Apple, Inc., 2019 WL 6117482, at *4–5 (N.D. Cal. Nov. 18, 2019) (dismissing case where "the qualifying language expressly notif[ies] the consumer that the actual screen area is less than indicated"); In re 5-Hour Energy, 2018 WL 11354864, at *5 (dismissing case where on-label disclosures render plaintiffs' interpretation unreasonable). Thus, the Court concludes that members of the public are not likely to be deceived by the packaging on Defendant's Asterisked Products.

Defendant's Unasterisked Products present a closer question. Plaintiff maintains that the term "plant-based," especially without the asterisk and disclosure, is likely to lead a reasonable consumer to believe that the Products contain only water, natural ingredients, and/or ingredients derived from plants. (See Opposition at 2–3.) That is, Plaintiff contends that a significant portion of the consuming public could understand "plant-based" and "natural care" to mean

---

[2] Plaintiff contends that a reasonable consumer would not notice or understand the disclosure in fine print. (Opposition at 11–12.) Yet "[a]sterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye." Dinan, 2020 WL 364277, at *8. "Because the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read, it matters less that the disclosure is allegedly no conspicuous on the package." Id. (internal quotation marks and citation omitted). "Once the consumer is directed to look for the disclosure because of the asterisk, [she] knows to look for it and can find it in the fine print." Id. Here, the "70%+ by weight" disclosure is small, but clear and readable. A rational consumer who cares about what "plant-based" means as it relates to baby wipes would be immediately directed to the disclosure on the front of the label, which clarifies that it means "70%+ by weight." If a consumer wants more information, she can read the back of the label, which explicitly lists "natural and synthetic ingredients."

100% natural or plant-based ingredients in this context.³ However, Plaintiff's interpretation is contrary to the disclaimer on the back of the label that expressly states the Product contains "natural and synthetic ingredients."

Plaintiff relies on Williams to argue that the Court should disregard this back-label representation. (See id. at 10 (citing Williams, 552 F.3d at 939).) In Williams, parents of toddlers alleged that Gerber's "Fruit Juice Snacks," a food product developed for toddlers, were packaged deceptively. Williams, 552 F.3d at 939. The front of the product included an image of various fruits, while the back disclosed that the only "fruit juice" in the snacks was "white grape juice from concentrate" and the two primary ingredients were sugar and corn syrup. See id. The Ninth Circuit found that a reasonable consumer could be misled into believing that the product contained some amount of the fruits pictured on the front label, which it does not. Id. at 939–40. As often cited, the Williams court held that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." Id. at 939. Manufacturers may not mislead consumers on the front and then use the ingredient list on the back as "a shield for liability for the deception." Id.; see also Brady v. Bayer Corp., 237 Cal. Rptr. 3d 683, 692–93 (Ct. App. 2018) (approving Williams and stating that "a black label ingredients list that conflicted with, rather than confirming, a front label claim could not defeat an action").

Yet as this Court and others have recognized, the Ninth Circuit has since refined its analysis. "Williams stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." Ebner, 838 F.3d at 966 (alteration in original); see also Dinan, 2020 WL 364277, at *9 ("Williams and its progeny speak only to situations in which the defendant has actually committed an act of deception on the front of the package."). By contrast, in Ebner, the Ninth Circuit held that because defendant's product label disclosed the correct weight of the included lip product, the plaintiff's claim that a reasonable consumer would be deceived as to the amount of product was not plausible. Ebner, 838 F.3d at 965. The Ebner court found salient the fact that "the weight label does not contradict other representations or inferences on [defendant's] packaging." Id. at 966. Thus, "unlike in Williams, there is no deceptive act to be dispelled." Id.

Here too, there is no deceptive act to be dispelled because Defendant's packaging is accurate. Plaintiff does not dispute that the Products, with or without the asterisk, ***in fact***

---

³ Plaintiff offers dictionary definitions to support her interpretation. (See Opposition at 4.) As Defendant points out, all of Plaintiff's cited definitions refer to a "food" or "diet" that consists "entirely," "mainly," *or* "primarily" of food derived from plants. (See Reply at 4–5.) At most, these definitions allow for both parties' interpretations of "plant-based," whether 70% or 100% of ingredients are derived from plants. More practically, these definitions provide no insight as to what "plant-based" means to a reasonable consumer who purchases baby wipes. As such, the Court finds these dictionary definitions to be largely inapposite. See Becerra v. Dr Pepper/Seven Up, Inc., 945 F.3d 1225, 1229–30 (9th Cir. 2019) (finding dictionary definitions of "diet" not helpful in the context of soft drinks).

contain at least 70% plant-based ingredients by weight. As such, Defendant's use of the term "plant-based" even on Unasterisked Products is not misleading because it is truthful. "Plant-based" reasonably means *mostly derived from plants*, which is what these Products are.

The Court's conclusion is bolstered by the Ninth Circuit's recent reasoning in Moore v. Trader Joe's Co., 4 F.4th 874, 882–83 (9th Cir. 2021). In Trader Joe's, the plaintiffs challenged Trader Joe's "100% New Zealand Manuka Honey" product. Id. at 876–88. Noting that the products actually consisted of only 57.3% to 62.6% honey derived from Manuka flower nectar, the plaintiffs argued that Trader Joe's labeling was likely to deceive a reasonable consumer. Id. at 876. Trader Joe's countered that its packaging complied with applicable Food and Drug Administration ("FDA") guidelines, which permits labeling honey by its "chief floral source." Id. at 876–77. Moreover, "busy bees cannot be prevented from foraging on different types of flowers, despite their keepers' best efforts," and so "it is impossible for bees to produce honey that is 100% derived from the Manuka flower." Id. at 877. Trader Joe's moved to dismiss the complaint, "arguing its Manuka Honey label is accurate, i.e., its product is 100% honey whose chief floral source is Manuka, and that no reasonable consumer would believe that it was marketing a product that is impossible to create." Id. The district court agreed and dismissed the complaint without leave to amend. Id. The Ninth Circuit affirmed, holding as a matter of law that "Trader Joe's Manuka Honey labeling would not mislead a reasonable consumer." Id.

Although the Ninth Circuit acknowledged that "there is some ambiguity as to what '100%' means in the phrase, '100% New Zealand Manuka Honey,'" courts considering deceptive advertising claims "should take into account all the information available to consumers and the context in which that information is provided and used." Id. (citing Bell v. Publix Super Markets Inc., 982 F.3d 468 (7th Cir. 2020)). The Trader Joe's court then held that "as a matter of law, other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar." Id.

Similarly, here, Plaintiff asserts that a reasonable consumer would not understand what "plant-based" or, if available, what "70%+ by weight" means. (See Opposition at 12.) "Defendant asks this Court to declare, as a matter of law, that reasonable consumers would understand the fine print '70%+ by [w]eight' statement to meant that . . . the Products are *not* composed of only plants and water." Id. The Court has no difficulty declaring as much. 70% does not mean all. Contrary to Plaintiff's contention, the phrase "plant-based wipes, with 99% purified water," *supports* the interpretation that the Products are not composed of only plants and water. For one, as discussed above, "plant-based" plainly means mostly, not necessarily all, derived from plants. Cf. Martinez v. Mead Johnson & Co., 2022 WL 15053334, at *5 (C.D. Cal. Oct. 22, 2022) ("[Plaintiff] . . . alleges no factual support for why a reasonable consumer would narrowly interpret a *something*-based label to mean that *that something* must contribute the most to the product's weight, relative to any other ingredient.") For another, a rational consumer who cares about what "plant-based" means could look to the back of the Product, which clarifies that it contains both "natural and synthetic ingredients." Any consumer's belief that "plant-based" means 100% plant-based in this context would be quickly

dispelled.  See Trader Joe's, 4 F.4th at 883 ("[A] reasonable consumer would be quickly dissuaded from Plaintiffs' 'unreasonable or fanciful' interpretation of '100% New Zealand Manuka Honey' based on three key contextual inferences from the product itself . . . .").

Further, the Ninth Circuit suggests that a reasonable consumer who cares about a facet of a product—who, for example, "attach importance to . . . a higher purity level" of honey derived from Manuka flower nectar, id. at 884, will spend at least a few seconds to read the packaging to see if it speaks to that facet.  She will likely start by looking at the front of the package, and unless the front label is unmistakably clear about the facet for which she seeks more information, she knows that she would "necessarily require more information because [she] could reasonably conclude" what the answer is.  Id. at 882.  She would then look at the "product itself," including any "key contextual inferences."  In the context of baby wipes, a reasonable consumer who cares about whether a product is "plant-based" will check the product's packaging to see if it answers her question.  Defendant's Asterisked Products are unmistakably clear on the front that they are 70% plant-based by weight.  Defendant's Unasterisked Products are also "plant-based" but do not specify the percentage of plant-based ingredients on the front label.  Logically, a reasonable "plant-based baby wipes" consumer will know to gather more information before she concludes that the Unasterisked Products are 100% plant-based.  Indeed, the back label lists both "natural and synthetic ingredients."  Thus, a rational consumer can draw the "key contextual inference" that the Unasterisked Products are not 100% plant-based because they contain "synthetic ingredients."  Only "some few consumers viewing [the Products' packaging] in an unreasonable manner" will fail to engage in this cursory analysis.  Ebner, 838 F.3d at 965.

In conclusion, the Court holds that no reasonable consumer would interpret Defendant's packaging to mean that the Products are 100% plant-based.  Accordingly, the Court **GRANTS** the Motion and **DISMISSES** the Complaint.  Because the Complaint is subject to dismissal in its entirety on the above grounds, the Court need not reach Defendant's additional arguments regarding Plaintiff's lack of standing and failure to state a claim for breach of warranty or unjust enrichment.  (See Motion at 10–18); see also Workman v. Plum Inc., 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) (holding that plaintiff failed to state a claim under the reasonable consumer test and declining to reach additional arguments for dismissal).

Moreover, because the Court finds that Plaintiff's interpretation is unreasonable as a matter of law based on its review of the Products' packaging as a whole, amendment of the Complaint is futile.  See Moore, 4 F. 4th at 886 (upholding dismissal of complaint in its entirety without leave to amend because "Plaintiffs have not alleged, and cannot allege, facts to state a plausible claim that Trader Joe's Manuka Honey is false, deceptive, or misleading"); Davis, 693 F.3d at 1171 (upholding dismissal of complaint in its entirety, including FAL and UCL claims, with prejudice); Ebner, 838 F.3d at 966-68 (upholding dismissal of UCL, CLRA and FAL claims with prejudice); Steinberg, 2022 WL 220641, at *8 (N.D. Cal. Jan. 25, 2022) ("Because the Court concludes that further amendment would be futile, given the implausibility of her deceptive labeling claims, Steinberg is not given leave to amend."); Macaspac v. Henkel Corp., 2018 WL 2539595, at *6 (S.D. Cal. June 4, 2018) ("No amount of additionally pleaded facts could change the features of the Purex bottles that render them non-deceptive.  The Court

accordingly denies leave to amend and dismisses the complaint with prejudice."); Workman, 141 F. Supp. 3d at 1037 ("[A]s this order finds that the labels at issue are not deceptive, and the labels themselves cannot be changed by a new complaint, any amendment would be futile."). The Court **DISMISSES** the Complaint in tis entirety **WITHOUT LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **DISMISSES** the Complaint **WITHOUT LEAVE TO AMEND**. The Court **VACATES** the June 5, 2023 hearing.

**IT IS SO ORDERED.**